(67 App. Div. 173.)

### HIGGINS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

MUNICIPAL CORPORATIONS—GREATER NEW YORK—CONSOLIDATION—POLICE—
    TELEGRAPH LINEMEN—TRANSFER—COMPENSATION—INCREASE.

    Laws 1887, c. 246, provides that telegraph linemen of the telegraph
bureau of the department of police of Brooklyn shall be included in the
Brooklyn police force, and shall be subject to the rules of the depart-
ment, and possess the same rights and privileges as other members of
the force, except that they shall not be liable to patrol duty. Brooklyn
City Charter 1888 (Laws 1888, c. 583) contains substantially the same
provision. *Held*, that a lineman of the telegraph bureau of the Brooklyn
police department was not made a patrolman of the Brooklyn police by
these acts, so as to be transferred to the police force of New York City
as a patrolman, by Greater New York Charter (Laws 1897, c. 378) § 278,
providing that certain officers of the Brooklyn police, including superin-
tendent of telegraph and telegraph operator, shall be members of the
police force of New York City, and thereby entitled to the increase of
pay for patrolmen who have served for five years.

Appeal from special term, Kings county.

Action by Peter J. Higgins against the city of New York. From
an interlocutory judgment sustaining a demurrer to the complaint,
plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and SEWELL, JJ.

C. Elliott Minor, for appellant.

William J. Carr (D. D. Whitney, Jr., on the brief), for respondent.

WOODWARD, J. The plaintiff brings this action to compel
the defendant to pay to him an increase of salary amounting to $200

per annum from the 1st day of January, 1898. The plaintiff was appointed to the position of telegraph lineman on the 21st day of September, 1887, in the then city of Brooklyn, and the theory of this action is that at some time, through the various changes in the charters of Brooklyn and the transforming of that city into a constituent borough of the city of New York, he has been changed into a patrolman of the first class, and that he is entitled to the compensation fixed for such officers. The defendant demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court at special term, and from the interlocutory judgment appeal comes to this court. The plaintiff alleges in his complaint that he received $1,200 per annum from the old city of Brooklyn from the time of his appointment up to January 1, 1898, and that since January 1, 1898, he has received $1,200 per annum from the city of New York. It does not appear from his complaint, which is all that is before us upon this appeal, that he ever made any claim that he was not being paid all that was due him from time to time. He has, as we may assume from the ordinary course of business in dealing with public officers, servants, and employés, received his compensation from time to time through warrants upon the proper officers, and he has been paid all that he claimed, and all that there was any provision for paying. He now asks the courts to so construe the statutes as to make him a patrolman in the uniformed police force of the city of New York, and to compel the city of New York to pay him something over $600 of extra compensation. It is conceded that prior to 1887 the telegraph linemen connected with the telegraph bureau of the police department of the city of Brooklyn were simply employés, but it is claimed that, by the provisions of chapter 246 of the Laws of 1887, their status was changed. The statute referred to provides:

"The telegraph superintendent, telegraph operators, and telegraph linemen attached to the telegraph bureau of the department of police and excise in the city of Brooklyn shall hereafter be included in the police force of the city of Brooklyn, and, except that they shall not be liable to patrol duty, shall be subject to all the rules of the department and possess the same rights and privileges as other members of the force."

This we are asked to construe as evidencing an intention on the part of the legislature to transform linemen into police officers of the rank of patrolmen, but we are unable to spell out such an intention. The fair import of the language is that the telegraph bureau is to constitute a portion of the police force of the city, to be subject to the same rules and regulations, and to be given the same rights and privileges as other members of that force, but without in any manner changing the rank or character of the individual members. Substantially the same provision is incorporated in the charter of the city of Brooklyn, enacted in 1888 (chapter 583 of the Laws of 1888), and this was the law prevailing at the time the Greater New York charter went into effect, on the 1st day of January, 1898. In the charter (chapter 378, Laws 1897), section 278 provides:

"The superintendent and deputy superintendent of police, and each in-spector, captain, sergeant, detective-sergeant, roundsman, patrolman, door-man, bridge-keeper, police surgeon, superintendent of telegraph, and telegraph operator, who is, when this act takes effect, in, of, or attached to the police force of the city of Brooklyn, or the police force appointed by the depart-ment of parks of said city, * * * shall be members of the police force specified in section two hundred and seventy-six of this act."

So that it is very doubtful whether the plaintiff in the present action is in fact a member of the police force of the city of New York at all, except in the capacity of an employé. At least, we are unable, from a reading of the plaintiff's complaint, to discover facts sufficient to constitute a cause of action against the defendant.

The interlocutory judgment should be affirmed, with costs. All concur.